Allen, J.
With every disposition to deprive the appellant, the fraudulent donee, of the fruits of his iniquity, it seems to me, that the repeated decisions of this court, the principles which regulate courts of equity, and considerations of public ^.policy, preclude us from giving relief in this case,'/ A fraudulent conveyance, though void as to creditors, is good between the parties. Being valid between the parties, it follows, that the fraudulent grantor cannot be permitted to allege his fraud to avoid his deed. -Accordingly, this principle was settled as early as the case of Hawes v. Leader, Cro. Jac. 270. an authority cited and relied upon in Starke's ex’ors v. Littlepage, 4 Rand. 368. as being founded on sound principles of law and policy. The case of Starke’s ex’ors v. Littlepage furnishes a striking illustration of the rule. The suit was brought by the representatives of the fraudulent grantee, to enforce the fraudulent conveyance; the debtor had continued in *430 possession of the property, and he was not permitted to protect that possession, hy shewing that his deed was fraudulent. Judge Coalter, who dissented from the majority of the court, did not controvert the general principle: he only differed as to the mode of its application; in his opinion, the parties were in pari delicto; he thought, that neither party could be heard, and that they should be left by the courts where they had placed themselves. The principle was reaffirmed in James v. Bird’s adm’r, 8 Leigh 510. and in Terrell v. Imboden, 10 Leigh 321.
If, then, the alleged trust had been in favour of the grantor, and he were the plaintiff, alleging that the deed was executed by him when embarrassed with debt, that though absolute and apparently for a full and valuable consideration, there was a secret trust that the property was to be held for his use, and to shew this trust he had proved the fraudulent intent in executing the conveyance, would a court of equity entertain him ? Even according to judge Coalter in Starke’s ex’ors v. Littlepage., the court would leave him where he had placed himself. Do the appellees occupy higher ground ? They are volunteers claiming the benefit of his act, seeking it through his fraud. An attempt was made to give a different colouring to the transaction, by the allegation, that the money which the fraudulent grantor furnished to his grantee to make the ostensible payment for the slave, was the money of the plaintiffs. But this allegation is not sustained, but rather disproved. It has been argued, that Oioen sets up the fraud to defeat the claim, and the case of Ward v. Webber, 1 Wash. 274. was relied on. In that case, the father had made an absolute conveyance to the daughter: after executing the deed, he got possession of it surreptitiously and destroyed it. The bill was filed by the daughter and her husband to set up the deed: the father answered, admitting the deed, but alleged it was made on condition his daughter *431 married to please him, which she had not done ; he did not rely on any fraud in the execution of the instrument. After his death, his son set up the defence, that the deed was executed when the grantor laboured under a prosecution which threatened his life ; and that it was made to screen his property from forfeiture if he were convicted, and upon a secret trust to reconvey to him, if he should get clear. Upon this state of facts it may be observed, that the duty of the parent to provide for the child, was a good consideration for the conveyance; and the execution of the deed being admitted, and no trust being declared on its face, the case of the plaintiffs was made out. They had an absolute conveyance, and no proof of fraud came from or was necessary to come from them. It was offered by the defendant. To have received such evidence, would have been to have permitted the party committing the fraud to rely on it in his own defence. The court decided against the defendant, upon the ground that no secret trust was proved. Tt was unnecessary to decide upon the effect of such proof, and no opinion was given upon it. So far as the decision goes, it was against the party setting up such a defence. In this case, as it seems to me, the proof of fraud comes, and of necessity must come, from the plaintiffs. The defendant has his deed, absolute upon its face, and made apparently for a full and valuable consideration. The plaintiffs are driven to the necessity of shewing, by parol evidence, that this recital was false, that no consideration passed; and in doing so, they prove that the money ostensibly paid by the defendant was in fact the money of the grantor, and that this device was resorted to for the purpose of screening the property from his creditors. The deed being absolute, the plaintiffs attempt to establish the secret trust, and in doing so shew the intent with which it was created. If the facts were reversed, if the trust had been expressed on the face of the deed, and the grantee had refused to execute it on *432 the ground of fraud, he would then be compelled to altege his 0wn fraud to protect himself, and could not be heard.
This view of the law and its application, is sustained by considerations of public policy. Men in the condition of Thompson are not likely to make such conveyances for their own benefit. They seek so to arrange' then- property as that the benefit may enure to those for whom they wish to provide, and upon whose kindness they can rely for support. The deed, to avail, must be absolute : this is necessary to deceive the public and defeat the creditor. If, after the creditor has been wearied out, the parties can be permitted to turn round, and shew that the recitals in the deed are false, made so with a fraudulent intent, and that there was a secret trust for the children of the grantor, the strongest inducement is held out to enter into such arrangements. It appears from the record, that the creditors of this grantor have been pursuing this property in the courts of Botetourt and Bedford; unsuccessfully, it maybe inferred, as this controversy for it has been commenced. If it had been well understood that the concealment of the fraud, though it might injure the creditors, could not benefit the plaintiffs, the creditors, perhaps, would have been more fortunate.
In addition to this objection to the claims of the plaintiffs, there is another which is insuperable. The two daughters arrived at full age and married, more than eight years before the filing of this bill. Owen had been their guardian; and at the settlement of his accounts the husband of one, and the brother and agent of the other, were present. A claim was then set up to the slaves, which Owen denied. He then claimed the property absolutely: even if there had been a trust originally, he then disclaimed it, and held the property adversely to the plaintiffs. About eight years elapsed after this settlement, before this suit was commenced. *433 Owen, in his answer, relies on the length of time as protecting his right to the property. And the law is well settled, that the quiet possession of slaves for more than five years vests the legal right to the property in the holder.
The conduct of Owen, in this transaction, has been marked with the most heartless perfidy towards his confiding father-in-law and his children, and the grossest fraud. But standing in the position he does, it seems to me that the law protects him.
I think the decree should be reversed, and the bill dismissed, but without costs.
Stanard and Cabell, J. concurred. Decree reversed with costs; and cause remanded to the circuit superior court, with direction to dismiss the bill without costs.